# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-624


**LAURI FOWLER WILLIAMS, ET AL.**

**VERSUS**

**ROBIN ROUGEAU, M.D., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2004-3607
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and
Marc T. Amy, Judges.

**AFFIRMED.**

**John E. Bergstedt**
**The Bergstedt Law Firm**
**Post Office Box 1884**
**Lake Charles, LA   70602**
**(337) 436-4600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Robin Rougeau, M.D.**

**Stephen R. Streete**
**Salter & Streete**
**4216 Lake Street**
**Lake Charles, LA   70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Lauri Fowler Williams**

AMY, Judge.

The plaintiff's mother underwent a gastroscopy and dilation procedure in order to alleviate her complaint of dysphagia. After her discharge following the procedure, the plaintiff's mother began having difficulty breathing and returned to the hospital where she underwent surgery to repair a tear in the esophagus. The plaintiff's mother died after almost a month of hospitalization. The plaintiff filed this matter against the gastroenterologist performing the gastroscopy and dilation, alleging that the dilator used for the procedure was too large and caused the esophageal tear. A jury found that the plaintiff failed to established a breach of the standard of care. The plaintiff appeals. We affirm.

**Factual and Procedural Background**

In February 1997, Virginia Ignasiak complained to Dr. Robin Rougeau, a gastroenterologist, that she was having difficulty with food becoming caught in her esophagus. To alleviate the dysphagia, Dr. Rougeau performed a gastroscopy, using a 60 French Maloney dilator in order to stretch the esophagus. Dr. Rougeau's diagnosis of the condition included esophageal spasm, a moderate hiatal hernia, and narrowing of the GE junction between the esophagus and stomach.

In July 2000, Ms. Ignasiak contacted Dr. Rougeau's office, complaining that the condition had returned and that she was once again having difficulty with food becoming caught in her esophagus. Dr. Rougeau again performed a gastroscopy on July 18th and, again, diagnosed esophageal spasm, a moderate sized hiatal hernial, and a narrowing of the GE junction. As before, Dr. Rougeau used a 60 French Maloney dilator to stretch the esophagus. Dr. Rougeau explained that, after the dilation, she again inserted the endoscope to search for abnormalities. She reported seeing only a small amount of blood.

Hospital records indicate that Ms. Ignasiak was discharged from the hospital a little more than an hour after the procedure's completion. According to Ms. Ignasiak's daughter, Lauri Williams, Ms. Ignasiak reported pain to Dr. Rougeau during her time in recovery and to a student nurse at the time of her release. Ms. Williams explained that Dr. Rougeau attributed the pain to esophageal spasm.

Ms. Ignasiak returned to Ms. Williams's home upon her discharge. Ms. Williams explained that her mother ate something in order to take her medication. Thereafter, her pain worsened and she began having difficulty breathing. Ms. Williams called Dr. Rougeau's office and was instructed to take Ms. Ignasiak to the hospital.

At the hospital, Ms. Ignasiak was diagnosed with a tear in the esophagus. Dr. John W. Digiglia, a cardiovascular surgeon, performed surgery to repair the tear. At trial, Dr. Digiglia described Ms. Ignasiak's condition as serious since the tear had allowed food matter to enter into the chest cavity. Afterwards, Ms. Ignasiak was placed in the intensive care unit, where she remained on a ventilator until her death almost one month later.

Ms. Williams, individually and on behalf of her mother's estate, filed this matter in 2004. She named Dr. Rougeau as a defendant, along with a physician rendering care in the intensive care unit, and Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital. After the plaintiff dismissed the latter two defendants, the matter against Dr. Rougeau proceeded to a jury trial. The plaintiff argued that Dr. Rougeau breached the standard of care owed by using the 60 French Maloney dilator rather than gradually increasing the size of the dilator. This,

2

argued the plaintiff, caused the esophageal tear that eventually resulted in her mother's death.

The jury found in favor of Dr. Rougeau, responding "No" to the interrogatory asking whether it found that Dr. Rougeau "breached an applicable standard of care" in the care and treatment of Ms. Ignasiak.

The plaintiff appeals, first questioning the trial court's refusal to permit the cross-examination of a defense expert on the contents of a letter written by a physician who did not testify at trial. The plaintiff also questions the determination that she did not establish a breach of the standard of care.

**Discussion**

*Questioning as to Letter*

The plaintiff first questions what she contends was an evidentiary ruling by the trial court regarding the cross-examination of Dr. John Kirkikis, an expert in the field of gastroenterology presented by the defense. However, review of this assignment reveals that the trial court did not rule as asserted by the plaintiff.

The issue arose when, during cross-examination of Dr. Rougeau and outside of the jury's presence, counsel for the plaintiff questioned Dr. Rougeau as to whether she was familiar with a letter written by Dr. James W. Smith. The letter, which was addressed to defense counsel and attached to the submission to the Medical Review Panel, expressed Dr. Smith's opinion as to the appropriateness of the dilator used in the procedure at issue. Dr. Rougeau confirmed that she had reviewed the letter. When asked if Dr. Smith agreed with her decision to use the 60 French Maloney dilator, she responded that "[h]e felt that a smaller one should be used, but he was not there." After this statement, the plaintiff proffered Dr. Smith's letter. Although the

3

letter had been previously placed in the record in support of another defendant's motion for summary judgment, it had not been entered into evidence at the trial by either party. Dr. Smith was not called as a witness.

After the letter was proffered, the trial court denied further cross-examination of Dr. Rougeau regarding the contents of the letter, explaining that counsel for the plaintiff would be allowed to call "any witnesses he wants to testify, but as far as this letter is concerned, we will not refer to the letter." Subsequently, counsel for the plaintiff questioned whether he would be able to inquire of the members of the Medical Review Panel whether they had reviewed the letter. The trial court stated that it would make "that decision at the appropriate time."

It appears to be on this point that the plaintiff questions the trial court's refusal to permit questioning as to the contents of the letter. The plaintiff argues that the trial court erred in prohibiting discussion of the letter in the cross-examination of Dr. Kirkikis, a member of the Medical Review Panel. However, review of the transcript reveals no ruling by the trial court preventing the questioning of Dr. Kirkikis regarding the proffered letter. As stated above, the trial court declined to rule on the further use of the letter at the time it was proffered. The transcript does not reveal that the issue was revisited during Dr. Kirkikis's testimony. Thus, the record contains no ruling by the trial court to review as urged by the plaintiff in the assignment of error.

Accordingly, this assignment lacks merit.

*Breach of the Standard of Care*

The plaintiff also questions the jury's determination that she did not prove that Dr. Rougeau breached the standard of care. Louisiana Revised Statutes 9:2794(A)(1)

provides that a plaintiff in a medical malpractice suit against a physician practicing in a medical specialty shall have "the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty." The plaintiff must also prove a breach of that standard of care by establishing "[t]hat the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill." La.R.S. 9:2794(A)(2). Finally, the plaintiff must establish "[t]hat as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred." La.R.S. 9:2794(A)(3).

In this case, the jury concluded that the plaintiff failed to establish breach of the standard of care. On appeal, this type of factual finding by a jury cannot be set aside unless it is manifestly erroneous or clearly wrong. *Jackson v. Tulane Med. Ctr. Hosp. and Clinic*, 05-1594 (La. 10/17/06), 942 So.2d 509. If review of the record reveals two permissible views of the evidence, a factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* Also, if "a factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Id.* at 513.

The plaintiff presented the testimony of Dr. David Morowitz, an expert in the fields of internal medicine and gastroenterology. In his opinion, the standard of care required Dr. Rougeau to perform the dilation procedure in stages, gradually increasing the size of the dilator. He explained that beginning the procedure with the 60 French Maloney dilator, the largest size available, was a breach of the standard of

5

care. Dr. Morowitz also testified that the use of Cortisone, which was included in Ms. Ignasiak's history, could render tissue more fragile.

This view of the evidence was available for the jury's consideration. However, it chose to reject this opinion and/or to accept the opinions offered by the defense. The defendant introduced the Medical Review Panel opinion, a portion of which provides:

> As to Dr. Rougeau, the panel feels that the dilator used was not too large for the procedure which was the same size dilator that had been used in the 1997 procedure. Proper informed consent was obtained specifically acknowledging that a perforation is a well recognized complication of an esophageal dilation. The evidence shows that Mrs. Ignasiak's vital signs were stable at the time of her release and the records did not indicate any complaint of pain. Dr. Rougeau's treatment of Mrs. Ignasiak was well within the applicable standard of care and she treated Mrs. Ignasiak appropriately at all times.

Dr. Rougeau also testified stating that her initial visualization of the esophagus showed only slight narrowing and that her condition was similar to her condition at the time of the 1997 procedure, which rendered "good results[.]" She explained that, given this condition:

> I elected to go with the same dilator that we had used at that time which had worked very well for her. It has the tapered tip at the end so you can actually feel as you're advancing the dilator forward. You always have the ability to stop at any time if you feel like there is a significant problem and come back. I did not feel that there was a problem. The dilation was completed. There was no blood on the dilator which sometimes there is; sometimes there's not. That doesn't mean much.

Dr. Kirkikus, a member of the Medical Review Panel, confirmed his opinion that the dilator used by Dr. Rougeau during the procedure was not too large. He explained that choice of dilator size is within the judgment of the physician, based on what the physician was seeing and feeling during the procedure. Finally, the defendant presented the deposition testimony of Dr. P. Hooper Nichols, a

6

gastroenterologist and member of the Medical Review Panel. Dr. Nichols also confirmed that he agreed with the panel's determination that the choice of dilator was not too large for the procedure and that choice of size is a matter of the physician's judgment. He noted that Dr. Rougeau's reference to the dilator passing easily through the esophagus was a factor in the panel's decision. His opinion remained the same at the time of his deposition.

As can be seen, the jury was presented with two competing versions of the evidence. It's determination to credit that offered by Dr. Rougeau is supported by the record and is neither manifestly erroneous nor clearly wrong. This assignment lacks merit.

Discussion and consideration of damages as urged by the plaintiff is rendered moot by this determination.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed to the appellant, Lauri Fowler Williams, individually and on behalf of the estate of Virginia Ignasiak.

**AFFIRMED.**